**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:17CR522 |
| | : | |
| Plaintiff, | : | Judge Dan Aaron Polster |
| | : | |
| v. | : | **SENTENCING MEMORANDUM OF** |
| | : | **DEFENDANT BRIAN H. HAWES** |
| BRIAN H. HAWES, | : | |
| Defendant. | : | |
| | : | |

Pursuant to L.Cr.R. 32.2(c), defendant Brian H. Hawes submits this sentencing memorandum and the accompanying appendix in advance of the sentencing hearing that is scheduled to take place on Wednesday, June 5, 2019 at 12:30 p.m. This memorandum outlines the parameters of the defense arguments to be made in greater detail at the sentencing hearing.

The upcoming sentencing hearing arises from Mr. Hawes's guilty plea to Count 9 and Count 10 of the indictment. Count 9 charges a trafficking violation involving more than 500 grams of methamphetamine. Count 10 is an accompanying violation of 18 U.S.C. § 924(c) for possession of a pistol. The government will dismiss Count 1, which charges a trafficking conspiracy involving methamphetamine. Mr. Hawes's co-defendant, Jason J. Shannon, pled guilty to Count 1 of the indictment on March 14, 2018. On July 10, 2018, the Court sentenced Mr. Shannon to 33 months in custody with four years of supervised release. The government dismissed Count 2 through Count 8 against Mr. Shannon.

Count 9 carries a mandatory minimum 10-year sentence. Count 10 carries a mandatory minimum 5-year sentence that must be run consecutively. Mr. Hawes's sentencing guideline calculation results in a criminal history category IV at offense level 27 putting him into a sentencing guideline range of 100 to 125 months. Because of the mandatory minimum sentence at issue here, his sentencing guideline range is effectively 120 to 125 months. Mr. Hawes reserved the right in his plea agreement to argue for a variance from the guideline range for Count 9 and to argue that the sentence imposed for Count 9 be run concurrently with any state sentence he is currently serving.

Mr. Hawes is currently serving a seven-year sentence arising out of a state criminal case in Arizona. State law enforcement officers arrested Mr. Hawes in Arizona on February 28, 2018. The state crimes were unlawful flight from law enforcement, car theft, a third-degree burglary, and a drug paraphernalia violation. Following guilty pleas, the Arizona state court sentenced Mr. Hawes on May 29, 2018. PSR, p. 9, para. 37. If maximum good time is granted, his release date is on February 28, 2024 with one year of judicial supervision to follow until February 27, 2025, which is his flat maximum time for the state convictions. Consequently, he has roughly five years and nine months remaining on the Arizona state sentence (or four years and nine months in the event he is granted his maximum good time and is released a year early on judicial supervision). *See* Appendix, Page 005-006.

This case reflects the automatic severity of mandatory minimum sentencing statutes. The Court's discretion is outlined in 18 U.S.C. § 3553, which provides in part as follows:

> **Imposition of a Sentence:**
> (a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>     (1) the nature and circumstances of the offense and the history and

characteristics of the defendant;
(2) the need for the sentence imposed—
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
 (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
  (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
  (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
 (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement—
 (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
 (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.
(b) APPLICATION OF GUIDELINES IN IMPOSING A SENTENCE.—
 (1) IN GENERAL.— Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating

3

> or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission.

All of this language is valuable, of course, but it does not reflect fully the actual limits on the Court's sentencing discretion. The following is the statement Mr. Hawes provided the probation officer during the presentence investigation interview. None of this statement was scripted or practiced in advance. He spoke entirely on his own with no coaching from anyone. Undersigned defense counsel was in the visitation room with him at the time, and the probation officer was on a video screen.

> I never thought it would get out of control. I made some mistakes because of my drug use was out of control. I made a mistake and I am trying to rectify things to get my life back on track. I want to return to school to better myself. I just want my life back. I am truly sorry I am even here. I am truly sorry.

PSR, p. 6, para. 17.

It is little wonder his drug use and consequently his life got out of control. Mr. Hawes's substance abuse problem started at the age of 11. By 12, he was using methamphetamine, the drug that currently puts him behind bars. At 13, he was using cocaine. He never completed any substance abuse programs, though he is now willing to attend treatment. PSR, p. 13, paras. 55-56. Mr. Hawes drifted from place to place as a young boy and as a young adult. His father played only a small (negative) role in his life, and he ended up being closer to his grandmother than his

4

mother. PSR, p. 11, para. 49. *See also* Appendix, page 004.

Despite all of these setbacks, Mr. Hawes found himself to be ambitious and hardworking. Although he got kicked out of high school, he later completed his GED, completed coursework at Kent State University, gained classroom and practical experience in industrial maintenance, and later became a certified electrician, welder, and machinist. *See* Appendix, Page 001-003. He is certainly no slouch. He helped build and then supervise his last employer's new facility in Ashtabula, Ohio, and at one point was recognized by the company (Aloterra) as having worked more hours as a welder for a given period than any other employee at the 600+ employee company. PSR, p. 13, paras. 57-58.

Acknowledgment by Mr. Hawes of his remorse, of his long-standing substance abuse problem, of his desperate need to get his life back on track and get his talents and skills back to work for himself and our community would normally warrant some type of sentencing adjustment—certainly from a sentence as severe as mandatory minimum 15 years. Yet, in the end, the Court's discretion downward is only 5 months, which is the difference between the mandatory minimum sentence for Count 9 (120 months) and the high end of the applicable guideline range for that count (125 months). Moreover, the additional 60 months associated with Count 10 must run consecutive with that.

Consequently, Mr. Hawes asks this Court to exercise its effective discretion by ordering that the mandatory sentence he will receive for Count 9 be run concurrently with the remaining undischarged term of his Arizona state sentence. As the above calculations indicate, this step will still leave slightly more than half of the mandatory 10-year sentence to be served in a federal institution plus the mandatory minimum sentence of five more years for Count 10. And all of this from a drug habit that got out of control.

The Court's authority to run concurrently the sentence to be imposed for Count 9 with the undischarged portion of the Arizona state sentence is set forth in U.S.S.G. § 5G1.3. That guideline section, which is captioned "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment," reads as follows:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.
> (c) If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.
> (d) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

This language is echoed in U.S.S.G. § 5K2.23, which is captioned "Discharged Terms of Imprisonment (Policy Statement)." This departure provision reads as follows:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment or Anticipated Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been

undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

In a peculiar twist applicable in cases such as this one where the sentencing court's discretion is so narrow due to statutory sentencing requirements, perhaps U.S.S.G. § 5K2.0, captioned "Grounds for Departure," has renewed value by providing some guidance at least by analogy in these kinds of sentencing situations. This guideline provision reads in part:

> (2) DEPARTURES BASED ON CIRCUMSTANCES OF A KIND NOT ADEQUATELY TAKEN INTO CONSIDERATION.—
> (A) IDENTIFIED CIRCUMSTANCES.—This subpart (Chapter Five, Part K, Subpart 2 (Other Grounds for Departure)) identifies some of the circumstances that the Commission may have not adequately taken into consideration in determining the applicable guideline range (e.g., as a specific offense characteristic or other adjustment). If any such circumstance is present in the case and has not adequately been taken into consideration in determining the applicable guideline range, a departure consistent with 18 U.S.C. § 3553(b) and the provisions of this subpart may be warranted.
> (B) UNIDENTIFIED CIRCUMSTANCES.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence.
> (3) DEPARTURES BASED ON CIRCUMSTANCES PRESENT TO A DEGREE NOT ADEQUATELY TAKEN INTO CONSIDERATION.—A departure may be warranted in an exceptional case, even though the circumstance that forms the basis for the departure is taken into consideration in determining the guideline range, if the court determines that such circumstance is present in the offense to a degree substantially in excess of, or substantially below, that which ordinarily is involved in that kind of offense.
> (4) DEPARTURES BASED ON NOT ORDINARILY RELEVANT OFFENDER CHARACTERISTICS AND OTHER CIRCUMSTANCES.—An offender characteristic or other circumstance identified in Chapter Five, Part H (Offender Characteristics) or elsewhere in the guidelines as not ordinarily relevant in determining whether a departure is warranted may be relevant to this determination only if such offender characteristic or other circumstance is present to an exceptional degree.

The commissioners knew that no set of guidelines could capture all of the possible scenarios that district judges would face at sentencing hearings. A sort of catch-all provision like

7

the one above was needed. The Sentencing Guidelines clearly envisioned situations such as this one where a departure or (later in the legal evolution of the Sentencing Guidelines) a variance would be appropriate, but some factual or legal obstacle (in this instance, statutory mandatory sentencing) precluded the exercise of judicial discretion to effectuate that departure or variance. Indeed, in the absence of the exercise of that discretion, the guideline regime fails society and the legal structure supporting that regime.

It is now well-established law that sentencing courts may take a degree of variance into account when sentencing outside the advisory guideline range, and that no extraordinary circumstances are needed to justify that variance. *Gall v. United States*, 552 U.S. 38, 46-51 (2007). "Because the Sentencing Guidelines are now advisory, a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of section 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (citation omitted). But what good is that mandate of *requiring* "a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a) if statutory sentencing minimums stand in the way of reaching that sentence?

In this instance, running a portion of the sentence attributable to Count 9 concurrent with Mr. Hawes's undischarged Arizona state sentence allows us to move closer to that mandate where a departure or variance is not possible. It also makes good logical and factual sense. As Mr. Hawes will explain at his upcoming sentencing hearing, he was in Arizona because he was fearful that federal authorities were tracking him down for his criminal conduct in Ohio. The criminal conduct for which he was convicted in Arizona was in many ways relevant conduct related to the federal crimes for which he now stands convicted. Were it not for the federal investigation of him and his co-defendant, Mr. Hawes would never have found himself in Arizona. Concurrent

sentencing allows for the appropriate adjustment—the tailoring of fair sentences through the application of U.S.S.G. § 5G1.3, which the Sixth Circuit has approved and left to the discretion of district judges.  *See*, *e.g.*, *United States v. Brummett*, 402 Fed. Appx. 126, 127-28 (6th Cir. 2010), *cert. denied*, 563 U.S. 912 (2011).

Mr. Hawes intends to speak at his sentencing hearing along with members of his family who will be traveling to Cleveland to participate.  Additional letters in mitigation of sentence may also be presented to the Court at that time.  Undersigned counsel also intends to provide further discussion of the arguments presented above.

One final point warrants a brief discussion.  An underlying assumption in this memorandum and in the presentations to be made by Mr. Hawes and those present on his behalf at the sentencing hearing is that the mandatory minimum sentences attached to Count 9 and Count 10 are far in excess of a statutorily mandated sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2).  This assumption rests upon undisputed facts: Mr. Hawes has a serious drug problem that has plagued him since he was a pre-teen; he has openly and honestly acknowledged this problem and his desire to address it; he holds a strong, evidence-based conviction, as do his family members, that he can still be a contributing member of society, as he was before falling to a severe drug addiction; and his federal crime, along with his related criminal conduct in Arizona, will cost him well over a decade of his life.

Extreme sentences in the federal system for offenses involving drugs and guns—far in excess of what state lawmakers deem sufficient for identical conduct prosecuted in state courts—cost our nation billions of dollars annually.  Were there a payoff in terms of a permanent reduction in drug usage or diminished availability of illegal narcotics on our streets, we might think

differently about the costs associated with lengthy periods of incarceration for non-violent crimes. Change comes slowly, however. The extreme sentences are no more rational than the fact that the 2018 federal budget request for the *entire* Third Branch of our federal government was slightly lower than the 2018 federal budget request for the federal prison system alone. *See* "The Judiciary FY 2018 Congressional Budget Summary," available at https://www.uscourts.gov/sites/default/files/ fy_2018_congressional_budget_summary_0.pdf; United States Department of Justice FY 2018 Budget and Performance Summary," available at https://www.justice.gov/jmd/ page/file/968276/download. Thankfully, individualized sentencing allows us some latitude at times to correct unfair and unjust consequences of unwise or imprudent policies. That such individualized tailoring of sentences can be done only to a minimal degree or sometimes not at all should never discourage us from making the effort. That is what Mr. Hawes's request at sentencing is all about.

                                                         Respectfully submitted,

                                                        */s/ Dennis G. Terez*
DENNIS G. TEREZ
Ohio Bar: 0030065
P.O. Box 22128
Beachwood, Ohio 44122
Phone: 216-256-4059
Facsimile: 216-932-8901
njcdgt@yahoo.com

Attorney for Brian H. Hawes

May 29, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2019, a copy of the foregoing Sentencing Memorandum of Defendant Brian H. Hawes (together with an accompanying Appendix of materials) was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Dennis G. Terez*
DENNIS G. TEREZ (0030065)
Attorney for Brian H. Hawes